#24546, #24547, #24593-aff in pt, rev in pt & rem-DG

**2008 SD 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *
(#24546, #24547)

| | |
|---|---|
| DEANN LESLIE LANGDEAU, | Plaintiff and Appellant, |

v.

| | |
|---|---|
| JEFFREY JAY LANGDEAU, | Defendant and Appellant. |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(#24593)

| | |
|---|---|
| JEFFREY JAY LANGDEAU, | Petitioner and Appellee, |

v.

| | |
|---|---|
| DEANN LESLIE LANGDEAU, | Respondent and Appellant. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
LYMAN AND HUGHES COUNTIES, SOUTH DAKOTA

* * * *

HONORABLE LORI S. WILBUR
Judge

* * * *

| | |
|---|---|
| PATRICIA A. CARLSON<br>Pierre, South Dakota | Attorney for plaintiff<br>and appellant. |
| | |
| JAMIE L. DAMON<br>Pierre, South Dakota | Attorney for defendant<br>and appellee. |

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 12, 2008

OPINION FILED **06/11/08**

#24546, #24547, #24593

GILBERTSON, Chief Justice

[¶1.]        This appeal arises from issues related to simultaneous divorce proceedings brought in the South Dakota Sixth Judicial Circuit Court and the Lower Brule Sioux Tribe Reservation Tribal Court.  On May 2, 2007, the circuit court entered an order dismissing the divorce complaint (#24546) and temporary protection order (#24547) filed by Deann Langdeau (Deann).  On June 18, 2007, the circuit court entered an order recognizing tribal court orders dated May 11, 2007, associated with the tribal court divorce petition of Jeffrey Jay Langdeau (Jay).  We affirm in part, reverse in part and reverse and remand in part.

**FACTS AND PROCEDURE**

[¶2.]        Deann and Jay were married on May 12, 1998.  Deann is a non-Indian. Jay is an enrolled member of the Lower Brule Sioux Tribe (LBST).  The couple resided together on fee land within the external boundaries of the Lower Brule Sioux Tribe Reservation (the "Reservation") from January 1998 until February 22, 2007.  Two children, ages nine years and six years, were born of the marriage and were either enrolled or eligible for enrollment in the LBST.[1]

[¶3.]        Deann left the Reservation with the children on February 22, 2007 and took up residence with her mother in Onida, South Dakota.  On February 27, 2007, Deann filed a petition for divorce with the circuit court in Lyman County.  On the same day, Jay was served with the summons and complaint.  On February 28, 2007, Deann filed a petition and affidavit in Sully County for a domestic abuse protection

---

1.      While there is no dispute that the oldest child was enrolled in the LBST, the record is conflicting as to the enrollment status of the youngest child.

order against Jay. In her affidavit, Deann alleged multiple occasions in which Jay physically abused or endangered her and the children. On the same day, the circuit court signed an *ex parte* temporary protection order, requiring Jay to have no contact with Deann or the children.[2] Jay filed for divorce in tribal court on February 28, 2007. Deann received service of Jay's tribal divorce petition on the same day. Additionally on February 28, the tribal court entered an *ex parte* order on Jay's *ex parte* motion for interim relief. The order established a visitation schedule with the children for Jay and directed Deann to provide Jay with copies of certain financial documents and to return a specified amount of cash to their bank account.

[¶4.]     Jay filed a motion to dismiss the circuit court's *ex parte* temporary protection order for lack of jurisdiction. Following a March 16, 2007 hearing in Sully County, the circuit court denied Jay's motion, but established its own visitation schedule. On April 5, 2007, a second hearing in regard to the temporary protection order was held; after which, the temporary protection order was dismissed in Sully County and reissued in Lyman County. The reissued order was entered in Lyman County on April 6, 2007.

[¶5.]     Jay filed motions in Lyman County to dismiss Deann's divorce action and the temporary protection order for lack of jurisdiction and to enforce the visitation schedule established earlier by the tribal court. A motions hearing was

---

2.     Deann had an older child from a previous relationship who had been living with Jay, Deann and the younger children prior to Deann's departure from the marital domicile. This older child was also named in the temporary protection order as a person with whom Jay was to have no contact.

conducted on April 10 and 11, 2007; after which, the circuit court dismissed the divorce action and the circuit court's *ex parte* temporary protection order in Lyman County. The circuit court adjudged that under the Uniform Child Custody Jurisdiction Act, the court did not have jurisdiction over the divorce and child custody because for most of the six months preceding Deann's divorce petition, the children had lived within the external boundaries of the Reservation. Further adjudging South Dakota to be an inconvenient forum and thereby declining jurisdiction, the circuit court determined the Reservation to be the home of the parties and therefore, the appropriate forum for the divorce and all related matters. The circuit court's order was entered on May 2, 2007 without memorandum opinion, findings of fact or conclusions of law.

[¶6.]      On April 11, 2007, Jay filed with the tribal court, a petition and affidavit for *ex parte* order of protection against Deann. On the same day, the tribal court issued the *ex parte* order of protection, including notice of hearing to be held April 12, 2007, which was served upon Deann. On April 12, 2007, by way of special appearance, Deann filed a petition and motion contesting the adequacy of service of process and notice for the April 12 hearing. In the alternative, Deann requested a continuance.[3]

[¶7.]      On April 13, 2007, the tribal court entered an *ex parte* temporary order of protection against Deann. The order required Deann to have no contact with Jay. It also reiterated the provisions of the tribal court's February 28, 2007 *ex parte*

---

3.     There is no documentation in the record pertaining to the April 12, 2007 tribal court hearing.

order for interim relief pertaining to Jay's visitation with the children and demand for Deann's return of cash and documents. *See supra* ¶3. On April 19, 2007, the tribal court renewed its *ex parte* temporary order of protection including the provisions from the earlier *ex parte* order for interim relief. A hearing date on the *ex parte* order was set for May 2, 2007.

[¶8.] At the May 2, 2007 tribal court hearing, Deann appeared through legal counsel and requested a continuance. The tribal court denied Deann's request and proceeded forward by issuing an order of protection and granting in part Jay's earlier motion for interim relief as to visitation. The interim-relief order set out that Jay's visitation should occur each weekend, beginning with 6:00 p.m. on Friday, May 4, 2007. However, while the schedule provided that the oldest child was supposed to be returned to Deann the following Sunday at 4:00 p.m., it required the youngest child to remain with Jay.[4] According to the order, the remaining issues raised by Jay's *ex parte* motion for interim relief were scheduled for hearing on May 15, 2007.

[¶9.] The tribal court orders directed Deann and Jay to exchange the children in the parking lot of Oahe, Inc. in Pierre, South Dakota. The first exchange did not occur as planned.[5] The tribal court then entered amended orders

---

4. The visitation provisions were also included in the tribal court's order of protection.

5. Why this exchange did not occur is disputed by the parties. Each claim that the other did not show up for the exchange.

on May 11, 2007, which set out the lobby of the Pierre Police Department as the exchange location commencing Friday, May 11, 2007 at 6:00 p.m. Jay alleged that Deann did not show up for this exchange at the appointed time and place.

[¶10.]      On May 21, 2007, Jay filed with the circuit court a motion to recognize the tribal court's amended orders of May 11 and to obtain authorization to have South Dakota law enforcement enforce the tribal court orders. The circuit court heard the matter on June 4, 2007 and thereafter, entered its order recognizing the tribal court's May 11, 2007 orders. No corresponding memorandum opinion, findings of fact or conclusions of law were entered. Subsequent to the proceedings giving rise to the issues in this case, Jay was granted a default divorce judgment by the tribal court.

[¶11.]      We consider five issues raised by Deann on appeal:

  1.  Whether the circuit court erred when it concluded that based on the residency of the parties and the children that it did not have jurisdiction to hear the child custody and divorce proceedings where Deann filed for divorce in Lyman County five days after moving off the Lower Brule Sioux Tribe Reservation, taking up residence in South Dakota.
  2.  Whether under SDCL 26-5B-204(a), the circuit court is required to exercise temporary emergency jurisdiction as to child custody when a *prima facie* case has been made that children or a parent have been subjected to abuse or mistreatment.
  3.  Whether the circuit court abused its discretion when, without entering findings of fact and conclusions of law, it declined jurisdiction after Deann alleged abuse and mistreatment as a basis for temporary emergency jurisdiction, pursuant to SDCL 26-5B-207(b).
  4.  Whether the circuit court abused its discretion when, without entering findings of fact and conclusions of law, it dismissed its temporary protection order.

5. Whether the circuit court abused its discretion when, without entering findings of fact and conclusions of law, it recognized the May 11, 2007 tribal court protection order and order for interim relief.

## STANDARD OF REVIEW

[¶12.] We review a circuit court's decision whether to exercise jurisdiction over child custody and divorce actions under the abuse of discretion standard. *See generally,* Regalado v. Mathieson, 2004 SD 87, ¶5, 684 NW2d 67, 70 (reiterating this Court's application of the abuse of discretion standard to circuit court decisions declining jurisdiction in favor of more convenient forums under the predecessor act to our currently enacted Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA)) (citing Ford v. Ford, 2002 SD 147, ¶7, 655 NW2d 85, 86; Fuerstenberg v. Fuerstenberg, 1999 SD 35, ¶16, 591 NW2d 798, 804 (citation omitted)), *see also* Lustig v. Lustig, 1997 SD 24, ¶5, 560 NW2d 239, 241 (citations omitted).

> Questions of law, including statutory construction, we review de novo. As the questions here are primarily matters of statutory interpretation, we review them under the de novo standard. A court's failure to consider the factors relevant to the principle of inconvenient forum under the [UCCJEA] is an abuse of discretion.

*Lustig,* 1997 SD 24, ¶5, 560 NW2d at 241 (internal citations omitted).

> The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare

the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. But, in construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result.

US West Communications, Inc. v. Pub. Utilities Comm'n of State of South Dakota, 505 NW2d 115, 123 (SD 1993) (internal citations omitted).

## ANALYSIS AND DECISION

[¶13.]     **1.     Whether the circuit court erred when it concluded that based on the residency of the parties and the children that it did not have jurisdiction to hear the child custody and divorce proceedings where Deann filed for divorce in Lyman County five days after moving off the Lower Brule Sioux Tribe Reservation, taking up residence in South Dakota.**

[¶14.]     In cases where the issue of child custody is incidental to that of divorce, and the circuit court has jurisdiction, the court may decline to exercise jurisdiction over child custody while retaining it over the divorce. SDCL 26-5B-207(d); *Lustig*, 1997 SD 24, ¶13, 560 NW2d at 244 (quoting predecessor statute to SDCL 26-5B-207[6]). However, the circuit court's decision whether to exercise jurisdiction as a convenient forum requires independent consideration of each issue and separate determinations. *Lustig*, 1997 SD 24, ¶14, 560 NW2d at 245 (where

---

6.     The pertinent part of SDCL 26-5B-207 that is functionally equivalent to that part of its predecessor statute, SDCL 26-5A-7 of the former Uniform Child Custody Jurisdiction Act, quoted in *Lustig* provides as follows:

> *A court of this state may decline to exercise its jurisdiction under this chapter* if a child-custody determination is incidental to an action for divorce or another proceeding *while still retaining jurisdiction over the divorce or other proceeding.*

(continued . . .)

the divorce action was properly commenced in South Dakota, holding that the circuit court's determination that it was an inconvenient forum to hear the incidental child custody issue was not a ground for the same determination as to the encompassing divorce action) (citing SDCL 25-4-30; 15-7-2(9)). Divorce jurisdiction is not controlled *per se* by the UCCJEA; in fact a circuit court errs when it dismisses a divorce proceeding based on the jurisdictional requirements of the UCCJEA. *Id.* (clarifying the extent of the jurisdictional scope of the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA)) (citations omitted). Therefore, we will address the issues of child custody and divorce separately in reviewing the circuit court's decision to dismiss the February 22, 2007 complaint brought by Deann in Lyman County.

*The Circuit Court's Dismissal Of The Child Custody Proceeding For Lack Of Jurisdiction Due To The Residency Of The Children*

[¶15.] As a preliminary matter, for the circuit court to act as a forum for a child custody determination, it must establish jurisdiction under SDCL 26-5B-201. This statute provides:

> *(a)* Except as otherwise provided in § 26-5B-204, *a court of this state has jurisdiction to make an initial child-custody determination* **only if**:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or *was the home state of the child within six months before the commencement of the proceeding* and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

_____

(. . . continued)
    SDCL 26-5B-207(d) (emphasis added).

-8-

(2) *A court of another state does not have jurisdiction under paragraph (1)*, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 26-5B-207 or 26-5B-208, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 26-5B-207 or 26-5B-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

(b) *Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.*

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

SDCL 26-5B-201 (emphasis added).

[¶16.]       "A court of this state shall treat a tribe as if it were a state of the United States for the purpose of applying [the general provisions and enforcement sections of the UCCJEA]." SDCL 26-5B-104(b).

[¶17.]       While we would normally expect the circuit court to enter findings of fact contemporaneous with an order adjudging it to have no jurisdiction to hear child custody proceedings, in this case there is no dispute as to the material facts.

-9-

Jay is an enrolled member of the LBST. The mutual children of Deann and Jay are either enrolled or eligible for enrollment in the LBST. The children resided within the exterior boundaries of the LBST for all but the last five days of the six month period preceding Deann's February 27, 2007, Lyman County divorce complaint. Consequently, we find no error in the circuit court's order dismissing the child custody proceeding for lack of jurisdiction due to the residency of the children.

*The Circuit Court's Dismissal Of The Divorce Proceeding For Lack Of Jurisdiction Due To The Residency Of The Parties*

[¶18.] Circuit courts may not refuse to hear divorce proceedings *properly commenced **first*** in South Dakota, in favor of another state's jurisdiction. *Lustig*, 1997 SD 24, ¶14, 560 NW2d at 245 (citing SDCL 25-4-30; SDCL 15-7-2(9)[7]). Circuit court's have subject matter jurisdiction over all divorce actions. Parsley v. Parsley, 2007 SD 58, ¶17, 734 NW2d 813, 818 (citing SDCL 16-6-9(4)). For the circuit court to exercise personal jurisdiction over the parties in a divorce action, the plaintiff must be a resident of this state at the time the divorce action is commenced. *Id.* (citing SDCL 25-4-30[8]). *See also* Wells v. Wells, 451 NW2d 402, 404 (SD 1990) ("A

---

7. SDCL 15-7-2 provides in pertinent part:

    Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts:
    . . .

    (9) With respect to any action for divorce, separate maintenance, or spousal support the maintenance in this state of a matrimonial domicile at the time the claim arose or the commission in this state of an act giving rise to the claim, subject to the provisions of § 25-4-30; . . . .

8. SDCL 25-4-30 provides:

(continued . . .)

state where only one spouse is domiciled has this power because domicile creates a relationship with a state, and '[e]ach state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders'") (citing *Williams v. State of North Carolina*, 317 US 287, 298, 63 SCt 207, 213, 87 LEd 279 (1942)). "[T]he residence must be an actual residence as distinguished from a temporary abiding place, and, further than this, it must not be a residence solely for the purpose of procuring a divorce[.]" *Parsley*, 2007 SD 58, ¶17, 734 NW2d at 818 (citation omitted).

[¶19.]    Our opinion in *Wells* is instructive on the divorce issue. In that case, both spouses were enrolled members of the Crow Creek Sioux Tribe and resided on the Crow Creek Sioux Tribe Reservation. *Id*. at 402. The wife left the reservation in April 1987 and settled in Rapid City, South Dakota the following July. The husband immediately filed for divorce in tribal court, but could not effect valid service of process pursuant to SDCL 1-1-25. *Id*. at 402, 403. In August 1987, the wife commenced divorce proceedings in circuit court, which was later dismissed because wife was unable to effect valid service of process pursuant to tribal law. *Id*. at 403. Accepting his method of service of process, the tribal court granted the husband a default judgment in November 1987. In March 1988, the wife

---

(. . . continued)

> The plaintiff in an action for divorce or separate maintenance must, at the time the action is commenced, be a resident of this state, or be stationed in this state while a member of the armed services, and in order that each party be entitled to the entry of a decree or judgment of divorce or separate maintenance, that residence or military presence must be maintained until the decree is entered.

commenced new divorce proceedings in circuit court and obtained valid service of process. The husband appeared specially; contesting jurisdiction on grounds that there was no longer a case in controversy subsequent to the tribal divorce judgment and that South Dakota had no subject matter jurisdiction. The circuit court rejected the husband's jurisdictional claims. The court concluded that it had concurrent subject matter jurisdiction and it refused to recognize the tribal court divorce because of the husband's failure to comply with personal service requirements of SDCL 1-1-25.

[¶20.] On appeal the husband argued that South Dakota's jurisdictional claim was an infringement on tribal sovereignty. *Id*. at 404-05. In rejecting his argument we considered the test set out by the United States Supreme Court in *Williams v. Lee,* 358 US 217, 79 SCt 269, 3 LEd2d 251 (1959) (*Lee* Infringement Test). We observed that the *Lee* Infringement Test was derived from facts that encompassed a single transaction involving an Indian, which occurred on a reservation and that the purpose for the Test is to protect tribal sovereignty in the realm of disputes involving Indians that take place *entirely* on a reservation, i.e. "[r]eservation affairs." *Id*. at 405 (quoting *Lee*, 358 US at 223, 79 SCt at 272, 3 LE2d 251).

[¶21.] Comparing the purpose of the *Lee* Infringement Test with the facts in *Wells* we concluded that once the wife left the reservation and took up residence in Rapid City, the state acquired an interest in the matter. Therefore, the divorce could not be characterized as exclusively a *reservation affair*. We held that "without

a proper tribal court divorce, the state court is merely exercising its own concurrent jurisdiction over the marriage of one of its domiciliaries." *Id.*

[¶22.]      We now contrast the facts of *Wells* with those of the instant case. Deann is a non-Indian. Notwithstanding the fact that she left the Reservation five days before filing for divorce in Lyman County, as a non-Indian living within the State of South Dakota, she was at all times relevant, a resident of this state. Unlike *Wells*, where the parties both were enrolled members of a tribe and the State did not acquire jurisdiction over the dissolution until one of them left the reservation, here Deann was a resident of South Dakota and the State *at all times* had both subject matter and personal jurisdiction over the dissolution of her marriage to Jay. *See id.* at 406 n* (citing Byzewski v. Byzewski, 429 NW2d 394 (ND 1988) (holding in a case where non-Indian husband and Indian wife resided on an Indian reservation that state court had subject matter jurisdiction over the marital dissolution)).

[¶23.]      As there were concurrent divorce proceedings pending in the circuit and tribal courts, what then becomes determinative to the situs of the adjudication is the procedural history. Deann filed for divorce in Lyman County on February 27, 2007. Jay received valid service of process on the same day. Jay filed for divorce in tribal court on February 28, 2007. Deann received valid service of process on the same day. Since Deann's complaint filed in Lyman County was first and it was properly commenced, the circuit court may not refuse to hear the divorce proceeding. *See Lustig*, 1997 SD 24, ¶14, 560 NW2d at 245 (citing SDCL 25-4-30;

15-7-2(9)). Consequently, we conclude the circuit court erred when it concluded it had no jurisdiction and dismissed the divorce proceedings.

[¶24.] **2.** **Whether under SDCL 26-5B-204(a), the circuit court is required to exercise temporary emergency jurisdiction as to child custody when a *prima facie* case has been made that children or a parent have been subjected to abuse or mistreatment.**

[¶25.] The affidavit filed by Deann in support of her petition for a domestic abuse protection order, refiled in Lyman County, included allegations that on multiple occasions Jay physically abused or endangered her and the children. Deann argues that her allegations stated a *prima facie* case of mistreatment and abuse that required the circuit court to exercise temporary emergency jurisdiction over the child custody proceedings pursuant to SDCL 26-5B-204(a).

[¶26.] SDCL 26-5B-204(a) is an additional basis under which the circuit court has jurisdiction over child custody beyond that established by the residency of the children and the parties under SDCL 26-5B-201. *See supra* ¶15 (reciting SDCL 26-5B-201). SDCL 26-5B-204(a) provides:

> A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

[¶27.] When the circuit court is found to have jurisdiction over child custody, as a matter of discretion, it may yield jurisdiction to another, more appropriate forum pursuant to SDCL 26-5B-207(a). In its order dismissing Deann's divorce complaint, the circuit court referenced this statute when it stated that it "declines

jurisdiction because South Dakota is an inconvenient forum . . . ." SDCL 26-5B-207(a) provides:

> A court of this state which has jurisdiction under this chapter to make a child-custody determination *may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.* The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

(Emphasis added).

[¶28.]    In the absence of ambiguity, there is no need for statutory construction. *US West Communications, Inc.*, 505 NW2d at 123 (citation omitted). Jurisdiction pursuant to SDCL 26-5B-204(a) may be declined in favor of a more appropriate forum under SDCL 26-5B-207(a). *See Lustig*, 1997 SD 24, ¶14, 560 NW2d at 245 (opining that "[l]aws must be read in consonance with the entire statutory scheme") (citing DeSmet Ins. Co. v. Gibson, 1996 SD 102, ¶8, 552 NW2d 98, 101). Thus, the circuit court did not violate SDCL 26-5B-204(a) when it declined to exercise temporary emergency jurisdiction over the child custody matter because under SDCL 26-5B-207(a) it had authority to conclude it was an inconvenient forum as compared to the Lower Brule Sioux Tribal Court.

[¶29.]    **3.    Whether the circuit court abused its discretion when, without entering findings of fact and conclusions of law, it declined jurisdiction after Deann alleged abuse and mistreatment as a basis for temporary emergency jurisdiction, pursuant to SDCL 26-5B-207(b).**

[¶30.]    In lieu of a provision requiring the circuit court to exercise temporary emergency jurisdiction pursuant to SDCL 26-5B-204(a), Deann argues that her

affidavit in support of her petition for a domestic abuse protection order constituted a *prima facie* case of mistreatment and abuse, thus requiring the circuit court to conduct an evidentiary hearing into her claims and enter findings of fact and conclusions of law before yielding jurisdiction to the tribal court pursuant to SDCL 26-5B-207(a). Deann avers that 26-5B-207(b) supports her position that findings were required. That subsection provides in part:

> Before determining whether it is an inconvenient forum, a court of this state *shall consider* whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
>
> *(1) Whether domestic violence has occurred and is likely to continue in the future* and which state could best protect the parties and the child;
> . . . .

SDCL 26-5B-207(b) (emphasis added).

[¶31.]     "The [UCCJEA] was designed to produce jurisdictional certitude for the sake of children. Deferring a child custody dispute to another forum can 'assure that the best interests of the child . . . are not subordinated to the parents' interest in obtaining the best terms of the divorce.'" *Lustig*, 1997 SD 24, ¶14, 560 NW2d at 245 (citation omitted). Although, declining jurisdiction pursuant to the inconvenient forum provision is discretionary and "[t]he dominant purpose of the . . . provision is to encourage restraint in the exercise of jurisdiction" *id*. ¶7 (citation omitted), the deference we extend to the circuit court in reviewing its use of this discretion imposes a solemn responsibility. *Fuerstenberg*, 1999 SD 35, ¶23, 591 NW2d 798, 807 (where the circuit court failed to enter findings on material disputed facts, reversing the court's decision to modify custody and remanding for a more

systematic consideration of the traditional factors relevant to the best interests of the child) (citing *Michelson v. United States*, 335 US 469, 480, 69 SCt 213, 221, 93 LEd 168 (1948)). *Compare Regalado*, 2004 SD 87, ¶¶6-10, 684 NW2d at 70-71 (affirming the circuit court's decision to decline jurisdiction as an inconvenient forum on reliance of its findings of fact that appeared on review "to be supported by the record and all reasonable inferences drawn therefrom").

[¶32.] In this case, Deann alleged serious incidents of physical abuse and child endangerment in her affidavit in support of her petition for domestic abuse protection. Deann alleged that Jay physically abused her and that he abused alcohol to the extent that he endangered the children. Deann stated that while under the influence Jay would drive with the children and that on one occasion he enlisted an 11-year-old child to drive him and their two children home from Lower Brule, South Dakota. Deann also alleged that on yet another occasion, Jay disciplined their oldest child by shooting her with a BB gun.

[¶33.] As we observe, SDCL 26-5B-207(b) provides that the circuit court "shall consider" factors including "[w]hether domestic violence has occurred and is likely to continue in the future[.]" We conclude the Legislature, when it enacted this section of the UCCJEA, intended the circuit court to enter the findings of fact and conclusions of law that we relied upon during appellate review under the predecessor UCCJA, before yielding jurisdiction over child custody to another forum. Accordingly, on this issue, we remand to the circuit court for findings of fact and conclusions of law and evidentiary proceedings satisfactory for the entry thereof.

[¶34.]    4.    **Whether the circuit court abused its discretion when, without entering findings of fact and conclusions of law, it dismissed its temporary protection order.**

[¶35.]    Deann also argues that the circuit court was required to enter findings of fact and conclusions of law before dismissing its temporary protection order. However, she fails to cite any authority to support her position. Therefore, this issue is waived on appeal. *See* State v. Pellegrino, 1998 SD 39, ¶22, 577 NW2d 590, 599 (failure to cite supporting authority on appeal is a violation of SDCL 15-26A-60(6)[9] and the issue is thereby waived) (citing State v. Knoche, 515 NW2d 834, 840 (SD 1994); State v. Dixon, 419 NW2d 699, 701 (SD 1988)).

[¶36.]    5.    **Whether the circuit court abused its discretion when, without entering findings of fact and conclusions of law, it recognized the May 11, 2007 tribal court protection order and order for interim relief.**

[¶37.]    Deann avers that pursuant to SDCL 1-1-25, the tribal court's May 11, 2007 amended protection order and amended order for interim relief are not entitled to recognition in South Dakota. SDCL 1-1-25 provides:

> No order or judgment of a tribal court in the State of South Dakota may be recognized as a matter of comity in the state courts of South Dakota, except under the following terms and conditions:
>
> (1) *Before a state court may consider recognizing a tribal court order or judgment the party seeking recognition*

---

9.    SDCL 15-26A-60(6) mandates that the appellant brief shall contain "[a]n argument [and that t]he argument shall contain the contentions of the party with respect to the issues presented, the reasons therefore, and *the citations to the authorities relied on*." (Emphasis added).

> *shall establish by clear and convincing evidence* that:
>
> (a) The tribal court had jurisdiction over both the subject matter and the parties;
>
> (b) The order or judgment was not fraudulently obtained;
>
> (c) *The order or judgment was obtained by a process that assures the requisites of an impartial administration of justice including but not limited to due notice and a hearing*;
>
> (d) The order or judgment complies with the laws, ordinances and regulations of the jurisdiction from which it was obtained; and
>
> (e) *The order or judgment does not contravene the public policy of the State of South Dakota.*
>
> (2) *If a court is satisfied that all of the foregoing conditions exist, the court may recognize the tribal court order or judgment in any of the following circumstances*:
>
> (a) *In any child custody or domestic relations case*; or
>
> (b) *In any case in which the jurisdiction issuing the order or judgment also grants comity to orders and judgments of the South Dakota courts*; or
>
> (c) In other cases if exceptional circumstances warrant it; or
>
> (d) Any order required or authorized to be recognized pursuant to 25 USC, § 1911(d) or 25 USC, § 1919.

(Emphasis added).

[¶38.]     Deann submits that she did not have an opportunity to be heard or offer evidence before the tribal court entered its amended orders on May 11, 2007. She contends that the amended orders were effectively a child custody determination as to the youngest child since they provided that following the first visitation exchange, that child was to remain with Jay.

[¶39.]     A circuit court will recognize a tribal court order under the principle of comity.[10]  First Nat'l Bank of Philip v. Temple, 2002 SD 36, ¶16, 642 NW2d 197, 203 (citing *Wells*, 451 NW2d at 403).  However, the party seeking recognition must first establish that the tribal court order complies with SDCL 1-1-25.  *Id.* (citing Mexican v. Circle Bear, 370 NW2d 737 (SD 1985)).  Such recognition will be accorded only if the statutory elements prerequisite to granting comity under SDCL 1-1-25 are established by clear and convincing evidence.  Gesinger v. Gesinger, 531 NW2d 17, 19 (SD 1995) (citing One Feather v. O.S.T. Pub. Safety Com'n., 482 NW2d 48, 49 (SD 1992)).

[¶40.]     From the record, it appears that the tribal court had scheduled a hearing for May 15, 2007 to consider the status of the protection order and the

---

10.    We have observed that the United States Supreme Court recognizes comity as:

> The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.'  Although the phrase has been often criticized, no satisfactory substitute has been suggested.
>
> 'Comity,' in the legal sense, is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

Kwongyuen Hangkee Co. v. Starr Fireworks, 2001 SD 113, ¶8, 634 NW2d 95, 96 (quoting Hilton v. Guyot, 159 US 113, 163-64, 16 SCt 139, 143, 40 LEd 95 (1895)).

order for interim relief issued on May 2, 2007.  The record reveals that legal counsel for Deann and Jay exchanged several e-mails wherein Deann's legal counsel attempted to arrange a continuance of the May 15 hearing.  The record is unclear as to whether the tribal court conducted a hearing on May 15, and there is no transcript in the record of any other hearing addressing the status of the orders after May 2, 2007.  *See In re* J.D.M.C., 2007 SD 97, ¶40, 739 NW2d 796, 808-09 (where the circuit court's findings of fact failed to address a material issue at the trial in which an Indian tribe was seeking recognition of a tribal court order, holding that when the tribal court issued a memorandum opinion, but the record included no transcript of its proceedings, there was no way to determine on appeal whether the matter before the tribal court had been "fully and fairly litigated").  However, Jay's petition for recognition reveals that on May 11, 2007, his legal counsel had a conference with the tribal court in which legal counsel informed the tribal court that Deann had not complied with the original visitation schedule.  According to the petition, the tribal court then signed the orders as amended and they were entered on May 11, 2007.

[¶41.]    The language of SDCL 1-1-25(1) unambiguously sets out that among other conditions for recognition of a tribal court order, the party seeking recognition must establish by "clear and convincing evidence" that "[t]he order or judgment was obtained by a process that assures the requisites of an impartial administration of justice[.]"  In this case, the complete record of the tribal court proceeding is lacking.  Moreover, Deann alleges that in contravention of South Dakota public policy she was not accorded due process by the tribal court and that Jay's petition for

recognition indicates there was an *ex parte* communication between his legal counsel and the tribal court that precipitated the May 11, 2007 amended orders. We conclude that under these circumstances the Legislature, when it enacted SDCL 1-1-25, intended the circuit court to enter findings of fact and conclusions of law for appellate review, before granting recognition to a tribal court order under the principle of comity. *See J.D.M.C* , 2007 SD 97, ¶49, 739 NW2d at 813. Accordingly, on this issue, we remand to the circuit court for appropriate evidentiary proceedings along with findings of fact and conclusions of law.[11]

[¶42.]     Affirm in part, reverse in part, and reverse and remand in part.

[¶43.]     SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

11.  Deann also argues in the alternative that if this Court were to conclude that the statutory elements prerequisite to recognition under SDCL 1-1-25(1) had been established by clear and convincing evidence, the tribal court orders would still not be entitled to comity under SDCL 1-1-25(2)(b), because she alleges that the LBST refused to serve Jay with the circuit court's temporary protection order. We need not address that argument under the circumstances of our holding, as it is not necessary given the unambiguous language of SDCL 1-1-25(2)(a).